Filed 8/7/14  In re R.T. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re R.T. et al., Persons Coming Under the Juvenile Court Law. | |
| STANISLAUS COUNTY COMMUNITY SERVICES AGENCY,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT T.,<br><br>    Defendant and Appellant. | F069288<br><br>(Super. Ct. Nos. 516597, 516598, 516599, 516600)<br><br>**OPINION** |

## THE COURT[*]

APPEAL from an order of the Superior Court of Stanislaus County.  Ann Q. Ameral, Judge.

Daniel G. Rooney, under appointment by the Court of Appeal, for Defendant and Appellant.

John P. Doering, County Counsel, Maria E. Ratliff, Deputy County Counsel, for Plaintiff and Respondent.

---

[*]    Before Poochigian, Acting P.J., Franson, J., and Peña, J.

-ooOoo-

R.T. is the father of R., M., N., and A., (the children), now ranging in age from 10 to 3 years old, who were found to be dependents of the juvenile court.[1] Two days prior to the scheduled termination hearing, father filed a petition for modification pursuant to Welfare and Institutions Code section 388.[2] The juvenile court denied the section 388 petition without a hearing. Father contends that the juvenile court erred in summarily denying his section 388 petition requesting modification of the court's order denying him reunification services because he presented prima facie evidence of changed circumstances and that the proposed change would promote the best interests of the children. We affirm the order of the court.

## FACTUAL AND PROCEDURAL BACKGROUND

The children were first detained in October of 2012 after Stanislaus County Community Services Agency (the agency) received a referral that father and mother were both arrested for having drugs and weapons in the home. The children were covered in bed bug bites and behind on their immunizations. They were informally placed with the maternal grandmother. Once out of jail, mother wanted the children returned, but grandmother was worried that mother was using methamphetamine, as the boys reported that they had not been to school for a week because mother was not waking up in the mornings.

By late October of 2012, the children were back with mother; father remained incarcerated. Mother stated that she knew the guns were in the home, but claimed they belonged to a friend who sometimes stayed at the house and kept them behind a locked

---

[1] A.F., the children's mother, is not a party to this appeal.

[2] All further statutory references are to the Welfare and Institutions Code unless otherwise stated.

2.

door. Mother also claimed the methamphetamine was found where the friend stayed. According to mother, the bed bugs were no longer an issue. The water to the house, which had been shut off for a few days, was once again on. Mother also claimed that domestic violence between her and father had stopped five years earlier. Mother was unable to provide a urine sample for a drug test.

Father was interviewed in jail in late October of 2012. He admitted using alcohol and methamphetamine, but claimed mother did not. Father gave a similar story about the guns and drugs in the house.

Over the next few months, mother continued to be unable to provide a urine sample or failed to come to the agency offices to do so as agreed.

According to a parole officer, father was released from jail in early December of 2012 and was on parole until March or April of 2013. Father admitted the guns were his, claiming he bought them in hopes of selling them to make money. According to the parole officer, there was current domestic violence between mother and father, as evidenced by a new hole in the wall and the children's statements that their parents fight and argue a lot. Father is a known gang member.

Mother and father agreed to participate in family maintenance services and were given referrals for a substance abuse assessment for February of 2013, but neither attended the appointment. Also in February of 2013, grandmother reported that one of the children had a boil on her bottom and was found sitting in a soaked diaper. That same day, mother and father refused to allow the social worker, a public health nurse and a police officer into their home.

A protective custody warrant was obtained and the four children were detained. The children were taken to the hospital for medical clearance where two of the children were diagnosed with a viral infection of the skin, and another with cellulitis and abscess of the buttocks, abrasions of multiple sites and bug bites. On the way to the hospital, several of the children disclosed that their house did not have gas or water.

*Section 300 Petition*

A section 300 petition filed February 22, 2013, alleged father was arrested for having drugs and weapons in the home, that he used drugs, that recent domestic violence had occurred in the home, and that father was a known gang member. Other allegations included his failure to attend a drug and alcohol assessment after agreeing to do so, and the condition and medical neglect of the children. The children were detained and again placed with grandmother.

*Jurisdiction/Disposition Report and Hearing*

The March 26, 2013, report prepared in anticipation of jurisdiction and disposition recommended that services be offered to mother but denied to father pursuant to section 361.5, subdivision (b)(12).[3] Father had previous felony convictions for assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)); possession of a controlled substance for sale (Health & Saf. Code, § 11378), and robbery (Pen. Code, § 211). In September of 2012, father had been charged with being a felon in possession of a firearm, possession of a controlled substance, owning prohibited ammunition, possession of unlawful paraphernalia, and violation of parole. The social worker noted that father admitted using alcohol and methamphetamine; there was an allegation of recent domestic violence between mother and father; and neither parent had yet provided a urine sample for drug testing. The social worker opined that the drug use was a possible underlying cause of the domestic violence and neglect of the children.

An addendum report filed April 16, 2013, stated that father had been referred for an alcohol and drug assessment, but had not yet completed it; he had visited the children once since detention; and he had not yet made an appointment with Sierra Vista for other services. Mother had done nothing on her services and had not visited the children at all.

---

[3]     Section 361.5, subdivision (b)(12) provides that a parent need not be provided reunification services if the parent has been convicted of a violent felony.

4.

At the April 17, 2013, contested hearing, father testified he had been with his children "throughout" their whole lives, but admitted on cross-examination that he had been incarcerated for a year starting in 2006, and again from October of 2007 until March of 2010. In 2012, father spent 70 days in jail on a parole violation. And, so far in 2013, he had spent 19 days in jail. By this point, father had had two visits with the children, but he claimed he could not visit the children more often because he needed a medical clearance because he had possible scabies. He testified that he did not attend the last visit because he had to earn money.

The agency argued that father failed to make the necessary showing that he had made efforts to change his violent and criminal lifestyle.

The juvenile court found the petition true, noting there had been "significant substance abuse issues as well as domestic violence in the home, which has adversely impacted the parents' ability to provide the proper care of the children." The juvenile court noted father's criminal history and the fact that he had been unable to "stay out of trouble for any lengthy period of time." The juvenile court also noted that the children had various health concerns mother and father were not addressing. Father was denied reunification services, pursuant to section 361.5, subdivision (b)(12), but was given twice monthly supervised visitation. Mother was granted six months of services.

*Six-Month Review Report and Hearing*

The October 17, 2013, report prepared in anticipation of the six-month review hearing recommended that services for mother be terminated due to a lack of participation and progress on her part. Adoption by grandmother was the recommended permanent plan for the children.

Father had visited the children 10 times between April 1 and October 1, 2013. He missed or cancelled 13 scheduled visits.

Mother requested a contested hearing which was held October 25 and 30, 2013. After hearing testimony from mother and the social worker, the juvenile court terminated

services for mother.  In response to a request from mother's counsel that "a bonding study be done," the juvenile court stated, "[t]he children will be made available for a bonding study."  The section 366.26 termination hearing was set for February 21, 2014.**4**

*Section 366.26 Selection and Implementation Report*

The section 366.26 report filed February 10, 2014, for the February 21, 2014, hearing, recommended termination of parental rights and adoption of all four children by grandmother.  The oldest child stated that he would like to live with his grandparents "forever."  The report stated that the children "have thrived and are well bonded to their grandparents.  It is in the best interest of the children for them to remain in the home of their grandparents.  All of the children's needs are met as well as being able to participate in extra curricular activities and remaining in the home of the grandparents will provide the children with permanency."

Father had visited the children four times since October 30, 2013, although the oldest child had not wanted to participate in one of the visits.  During the most recent visits with both parents, the youngest child cut her finger on a razor blade found in mother's purse.  The report noted that father was still facing criminal charges with possible prison time.

*Section 388 Petition*

On February 19, 2014, just two days prior to the scheduled section 366.26 hearing, father filed a section 388 petition seeking to open reunification services for himself. Father alleged changed circumstances because he had now completed a 12-week parenting class; had visited the children and spoke to them on the phone about two times per week; and he was no longer on parole and had not been arrested for any new offenses. A letter of attendance and a completion certificate for the parenting class was attached.

---

**4**     Father filed a notice of intent to file writ petition.  However, father did not follow through and the matter was dismissed December 17, 2013 (Case No. F068300).

The petition alleged "The children love their father. Dr. Jeffrey Miller has determined that [R.] would suffer detriment outweighing the benefits of adoption if parental rights were terminated." Nothing was attached from Dr. Miller.

The juvenile court summarily denied the petition that same day, finding that the request did not state new evidence or a change of circumstances. The juvenile court reasoned:

> "Completion of a 12 week parenting class does not evidence a significant change of circumstances when the reasons for removal of the children were substance abuse, domestic violence and neglect; it is not even real evidence of changing circumstances. Further, there is no evidence provided as to the findings of Dr. Jeffrey Miller other than one line as to his determination." !(CT 278)!

*Section 366.26 Hearing*

The February 21, 2014, section 366.26 hearing, was continued to April 14, 2014, to allow time to complete a bonding study. On April 14, 2014, the hearing was again continued to complete a second bonding study, this time to May 12, 2014.

## DISCUSSION

Father contends that he presented prima facie evidence to support an evidentiary hearing on his section 388 petition and therefore the juvenile court's summary denial of the February 19, 2014, petition was an abuse of discretion. We disagree.

> "Under section 388,[5] a parent may petition the court to change, modify, or set aside a previous court order. The petitioning party has the burden of showing, by a preponderance of the evidence, that there is a

---

**5** Section 388, subdivision (a)(1) reads, in relevant part: "Any parent or other person having an interest in a child … may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court … for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. The petition shall be verified and … shall set forth in concise language any change of circumstance or new evidence that is alleged to require the change of order or termination of jurisdiction."

change of circumstances or new evidence, and the proposed modification is in the minor's best interest. [Citation.]" (*In re S.M.* (2004) 118 Cal.App.4th 1108, 1119.)

The petition for modification under section 388 must contain a "concise statement of any change of circumstance or new evidence that requires changing the [prior] order." (Cal. Rules of Court, rule 5.570(a)(7).) The parent seeking modification must "make a prima facie showing to trigger the right to proceed by way of a full hearing. [Citation.]" (*In re Marilyn H.* (1993) 5 Cal.4th 295, 310.) "There are two parts to the prima facie showing: The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children. [Citation.]" (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) Allegations of changing, rather than changed, circumstances are not sufficient to warrant a hearing. (See *In re Casey D.* (1999) 70 Cal.App.4th 38, 49.)

When determining whether the petition makes the necessary showing, the juvenile court must liberally construe it in favor of its sufficiency. (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672.) Section 388 specifies that the court must order a hearing to be held, "[i]f it appears that the best interests of the child … may be promoted by the proposed change of order .…" (§ 388, subd. (d).) "'The prima facie requirement is not met unless the facts alleged, if supported by evidence given credit at the hearing, would sustain a favorable decision on the petition.' [Citations.]" (*In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1505.)

We apply the abuse of discretion standard in our review of the juvenile court's decision to deny the section 388 petition without a hearing. (*In re Brittany K., supra,* 127 Cal.App.4th at p. 1505.) We affirm the order unless it ""'exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.'"" (*Ibid.*) The juvenile court's decision will not be disturbed ""'unless the trial court has exceeded the

limits of legal discretion by making an arbitrary, capricious, or patently absurd determination [citations].""" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318.)

Father claims the juvenile court abused its discretion in summarily denying his petition because, in doing so, it relied on his substance abuse and domestic violence issues, which were not the basis for finding dependency jurisdiction. Father argues that the specific reason for jurisdiction attributable to him was the "general neglect" of his children, based on him "allowing loaded guns in the home and allowing someone to stay in the home and a bag of methamphetamine was found." Father contends that, because jurisdiction was based only on an allegation of "general neglect," his completion of a 12-week parenting class indicated his circumstances had changed, as required in a section 388 petition, "because he had made an effort to become a better parent." Father acknowledges that his extensive criminal record was the basis for denial of reunification services, but claims it was not the reason for jurisdiction.

Father misstates the evidence. At the jurisdiction hearing held April 17, 2013, the juvenile court found the section 300 petition filed February 22, 2013, to be true. The petition contained numerous allegations aside from the fact that there were weapons and methamphetamine in the house, including allegations that the children were in need of medical attention, that father admitted using methamphetamine and that father's parole officer indicated current domestic violence. At the hearing on the petition, the juvenile court noted mother and father's "significant substance abuse issues" and "domestic violence in the home … has adversely impacted the parents' ability to provide the proper care of the children." It also noted the children's need of medical attention, the weapons in the home, and father's criminal history and his inability "to stay out of trouble for any lengthy period of time." In addition, the disposition report opined that mother and father's substance abuse was the probable source of both the domestic violence and the neglect of the children, and father was referred for an AOD assessment, both at the time of the proposed family maintenance plan and again at detention. Finally, the section

366.26 report, which the juvenile court had before it at the time of the section 388 hearing, also noted that father "is currently still in the midst of facing criminal charges with possible prison time."

When "determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case." (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.) Here, at the time of the section 388 petition, the juvenile court had before it evidence of father's substance abuse, instances of domestic violence, his criminal history, his gang membership, and his failure to seek medical treatment for his children. Father provided no evidence that he had dealt with his substance abuse or domestic violence. While father's completion of a parenting class was a positive one, we cannot say that it provided a genuine change of circumstances such that a section 388 petition hearing was warranted. (*In re Anthony W., supra,* 87 Cal.App.4th at p. 250.) The trial court did not abuse its discretion in concluding that father did not make a prima facie showing of changed circumstances entitling him to a hearing on the petition.

Father was also required to make a prima facie showing that the best interests of the children would be promoted by giving him reunification services. We determine that the juvenile court did not abuse its discretion in concluding that he did not make such a prima facie showing. "[U]p until the time the section 366.26 is set, the parent's interest in reunification is given precedence over the child's need for stability and permanency." (*In re Marilyn H., supra,* 5 Cal.4th at p. 310.) However, after termination of reunification services, it is presumed that continued care is in the best interests of the child. (*Ibid.*)

Father's conclusory statements in his section 388 petition that it would be in the children's best interests to grant father reunification services because "[t]he children love their father," and "[a]llowing father an opportunity to reunify would allow that bond to remain and provide the stability of a parental relationship with the children's father," do not, by themselves, support a finding that the children's best interest would be promoted

10.

by doing so. As for father's claim in the petition that Dr. Miller had determined that a strong bond existed between father and R., the juvenile court, in its summary denial of the petition, noted that father provided no evidence of Dr. Miller's findings.

Father acknowledges that he provided no evidence with the petition, but states that the juvenile court "was hardly uninformed about Dr. Miller's involvement" in his case, as evidenced by the fact that the juvenile "court had ordered a bonding study for each child on September 30, 2013"[6]; the section 366.26 hearing scheduled for February 21, 2014, was continued to allow for completion of a bonding study; and the agency requested and received additional time on April 14, 2014, to complete a second bonding study. Father suggests that all of this means that his claim that Dr. Miller's determination that R. would suffer detriment if father's parental rights were terminated and was not in the children's best interests was a factor the juvenile court should have considered.

What the juvenile court knew or was aware of after February 19, 2014, when it denied the petition, is irrelevant. Instead, the question is what the juvenile court knew or had before it on February 19, 2014, when it denied the petition. Based on the evidence before it at the time the petition was filed, the juvenile court properly concluded that father's section 388 petition did not make a prima facie showing of both a change of circumstance and that a change of order would be in the best interests of the children.

### DISPOSITION

The order denying father's section 388 petition is affirmed.

---

**6** The reporter's transcript from October 30, 2013, actually states that "[t]he children will be made available for a bonding study."

11.